UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

COREY E. FISHERMAN,  CIVIL NO. 15-3180 (JRT/JSM)

    Plaintiff,

v.  REPORT AND RECOMMENDATION

LON AUGDAHL, M.D. and
JOAN ULWELLING, R.N., A.P.N.,

    Defendants.

The above matter came before the undersigned United States Magistrate Judge upon defendants Lon Augdahl, M.D. and Joan Ulwelling, R.N., Motion for Summary Judgment [Docket No. 24]. The matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

**I.  FACTUAL BACKGROUND**

Plaintiff Corey Fisherman is a prisoner at the Minnesota Correctional Facility in Stillwater ("MCF-Stillwater"). Plaintiff entered the Minnesota Department of Corrections ("MDOC") on November 7, 2014. Affidavit of Lon Augdahl, M.D. ("Augdahl Aff.") [Docket No. 26], ¶ 2. At that time, plaintiff reported that he was taking Wellbutrin.[1] Id. Wellbutrin, is a non-formulary medication within the MDOC. Id., ¶ 6. Wellbutrin is a highly abused medication in the MDOC system. Id., ¶ 7. Prisoners have been known to divert their medication and misuse or sell it, or they become potential targets for

---

[1] Wellbutrin is a brand name of Bupropion, which is prescribed for the treatment of depression and seasonal affective disorder. U.S. Nat'l Library of Med., Bupriopion, MedlinePlus, https://www.nlm.nih.gov/medlineplus/druginfo/meds/a695033.html (last revised Feb. 15, 2016).

intimidation and violence by other prisoners. Id. Thus, Wellbutrin is scrutinized to avoid diversion and bullying. Id.

Under MDOC policy, and subject to a few exceptions, medications being taken upon admission to MDOC are to be maintained until the prisoner can be seen and evaluated by a psychiatrist. Id., ¶ 2. If a prisoner is taking a non-formulary medication upon admission to the MDOC, a physician discusses the non-formulary policy with the prisoner and prescribes a formulary medication unless the prisoner has evidence that their use of a non-formulary medication has been ongoing for several years and that other, formulary medications had been tried and had failed. Id., ¶ 6. On November 7, 2014, plaintiff's prescription for Wellbutrin was continued on a 30-day order to end on December 7, 2014. Id., ¶ 2.

On November 12, 2014, plaintiff was seen for a mental health screening in connection with his admission to the MDOC. Affidavit of Anthony J. Novak ("Novak Aff.") [Docket No. 27], Ex. 1 (plaintiff's medical records provided by MDOC). Plaintiff expressed anger at the potential of Wellbutrin being taken away and alleged that the reason MDOC staff were taking his medication away was because he was Native American. Id., Ex. 1. Plaintiff refused to sign a release for his medical records from past providers. Id., Ex. 1.

On December 3, 2014, plaintiff saw defendant Dr. Lon Augdahl for a psychiatric assessment. Augdahl Aff., ¶ 3. During the assessment, plaintiff was already aware that his Wellbutrin may not be continued, and he became angry, crumpled up a sheet of information on Wellbutrin's side effects, threatened Dr. Augdahl with legal action and walked out of the examination room. Id. Dr. Augdahl found that plaintiff's mental health

symptoms were vague and did not meet the criteria for a major mental health diagnosis such as Major Depressive Disorder. Id., ¶ 4. Plaintiff's behavior did not allow for a discussion as to whether his Wellbutrin could be replaced by a formulary medication. Id., ¶¶ 4, 5. Dr. Augdahl wrote plaintiff a tapering schedule for Wellbutrin, to end on December 20, 2014. Id., ¶ 5.

On January 28, 2015, Dr. Augdahl saw plaintiff for a follow-up visit and suggested Effexor XR (extended release) as an alternative to Wellbutrin, based partially on prior reports of beneficial use. Augdahl Aff., ¶ 8; Novak Aff., Ex. 1. Plaintiff asked whether Klonopin, a controlled substance, could be an option for him. Id. Dr. Augdahl prescribed a retrial of Effexor XR, to begin on January 30, 2015. Id.

On February 3, 2015, plaintiff had a mental health follow-up appointment with a psychologist, at which he reported no side effects from Effexor XR, as well as "hopefulness."[2] Augdahl Aff., ¶ 9. When asked about the Effexor XR, plaintiff stated that it was helping "a little bit … better than nothing," but he expressed frustration with the decision to discontinue Wellbutrin. Id. Plaintiff continued taking Effexor XR through March 12, 2015, and was 97% compliant in taking it. Id., ¶ 10.

On March 12, 2015, plaintiff underwent an examination by defendant Joan Ulwelling, R.N. at which time, plaintiff reported that his Effexor XR was not effective. Novak Aff., Ex. 1. Plaintiff requested that he be prescribed Wellbutrin and that Effexor XR be discontinued. Id. Ulwelling reviewed the non-formulary policy with plaintiff and recommended that he be started on Wellbutrin. Id.

---

[2] The treatment report for this visit was not contained in plaintiff's medical records submitted by defendants in connection with this motion.

On March 16, 2015, Dr. Augdahl responded to Ulwelling's non-formulary request by asking if plaintiff had tried an SSRI,[3] as the MDOC had no records showing previous anti-depressant trials, and no records supporting use of Wellbutrin in the community. Augdahl Aff., ¶ 11. Additionally, plaintiff's symptoms remained vague. Id.

On June 24, 2015, plaintiff told Ulwelling that the only medication that had ever helped him was Wellbutrin, and he threatened legal action if he did not get it. Novak Aff., Ex. 1. Plaintiff described symptoms of anger, frustration and anxiety. Id. Ulwelling explained to plaintiff why his request for Wellbutrin was denied. Id. Plaintiff acknowledged that Effexor XR had been somewhat helpful in treating his symptoms, but he noted that it was "not as good." Id. Ulwelling found that it was difficult to discern any psychiatric symptoms from plaintiff other than anger. Id.

On October 12, 2015, plaintiff saw Dr. Linda Brevitz for a mental health examination. Id. Plaintiff reported that his medications were "not helping that much." Id. He also described symptoms of "a lot of anxiety." Id.

Plaintiff elected to be restarted on Effexor XR, a formulary option, instead of trying an SSRI. Augdahl Aff., ¶ 13. Plaintiff has been on a 150 mg daily dose of Effexor XR since July, 2015. Id. Plaintiff continues to meet with a psychologist who has described his condition as "stable." Id., ¶ 14.

---

[3] SSRI stands for "selective serotonin re-uptake inhibitor," which is a class of drugs typically used as antidepressants in the treatment of major depression and anxiety disorders. Augdahl Aff., ¶ 12. The MDOC's list of formulary agents includes three different classes of antidepressants. Id. Common and established medical practice is that two trials of the most common SSRI class be tried first before prescribing other classes of medications. Id.

4

On January 28, 2015, plaintiff filed an Amended Complaint [Docket No. 17] against defendants pursuant to 42 U.S.C. § 1983.[4] In his Amended Complaint, plaintiff alleged that on December 20, 2014, Dr. Augdahl wrongfully "cut off" his prescription for Wellbutrin for no reason, even though he had been taking it before he entered the MDOC on November 7, 2014. Id., p. 4. According to plaintiff, it was cruel and unusual for a doctor to do this because he was taking Wellbutrin for his major depression, and he is a Native American from the Red Lake Band of Ojibwe. Id. Plaintiff alleged that Ulwelling had prescribed him Wellbutrin on March 12, 2015, but Dr. Augdahl wrongfully denied the prescription and his mental health care, even though other inmates had received Wellbutrin. Id., p. 7.

For relief, plaintiff demanded $1.5 million for wrongfully being taken off Wellbutrin, and $200,000 for depression he had suffered during the time he had been off his medications. Id., p. 7. Plaintiff further requested that the Court ensure that this does not happen to other inmates or Native Americans. Id.

On May 27, 2016, defendants filed the instant motion for summary judgment. In support of their motion, defendants argued that plaintiff's Eighth Amendment claim failed as a matter of law because he could not prove that they acted with deliberate indifference to his existing serious medical needs or to conditions positing a substantial risk of serious future harm. Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem.") [Docket No. 25], pp. 7-10 (citing Weaver v. Clark, 45 F.3d 1253, 1255 (8th Cir. 1995); Haavisto v. Perpich, 520 N.W.2d 727, 732-33 (Minn. 1994); Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)). First,

---

[4] Defendants did not object to the filing of this Amended Complaint. Letter to Court dated January 13, 2016. [Docket No. 13].

5

plaintiff's condition of depression is chronic and non-life threatening, and there was no evidence that his condition had escalated or that any of the claims in his Complaint "adversely affected" his long-term prognosis. Id., p. 8. Thus, plaintiff's situation did not present a serious medical need and was analyzed and managed appropriately by the medical team at MCF-Stillwater. Id.

Second, defendants contended that plaintiff could not demonstrate deliberate indifference because there was no evidence showing they had a "'sufficiently culpable state of mind.'" Id., p. (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Plaintiff has presented no evidence or expert opinion to support his allegation that the medical treatment he received was the result of deliberate disregard of his medical needs. Id. In his Amended Complaint and attachments, plaintiff admitted that he was offered alternative medications and that the non-formulary process was described to him in detail. Id. Merely disagreeing with a course of treatment is insufficient as a matter of law to establish deliberate indifference. Id. (citing Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir. 1988)). The record also showed that plaintiff's medical providers responded to his concerns and provided him with appropriate and consistent treatment for depression, while also being mindful of Wellbutrin's effects in a prison setting. Id., pp. 9-10. Such evidence does not establish that plaintiff's care was "'so inappropriate'" that it amounted to "'intentional mistreatment.'" Id., p. 10 (citing Jolly v. Knudsen, 205 F.3d 1094, 1097 (8th Cir. 2000)).

On June 7, 2016, plaintiff notified the Court of his new mailing address. [Docket No. 30]. On June 8, 2016, this Court issued an Order directing defendants to serve their motion for summary judgment on plaintiff at his new address by June 15, 2016,

and put in place a briefing schedule for the motion. [Docket No. 31]. Per this Order, plaintiff was ordered to respond to defendants' motion by July 13, 2016, and defendants were ordered to serve and file any reply by July 27, 2016. Id.

On June 13, 2016, defendants served the summary judgment papers on plaintiff at his new address. Certificate of Service [Docket No. 32]. Susbsequently, plaintiff sent letters to this Court's chambers, which were mailed on June 20, July 11, and August 8, 2016. [Docket No. 35, 36, 38].[5]

On July 28, 2016, plaintiff mailed to this Court's chambers a document seeking judgment by default for defendants' failure to file a reply by July 27, 2016.[6] [Docket No. 37].

On August 1, 2016, defendants sent a letter to this Court addressing plaintiff's recently filed "motion" requesting a default. [Docket No. 33]. Defendants stated that they had filed a motion for summary judgment on May 27, 2016, had re-served the motion per the Court's Order, and as they had not received a response to their summary judgment motion, they did not believe a reply was required. Id. On August 8, 2016, plaintiff mailed a letter to this Court's chambers stating that he had sent the letters and affidavits[7] to defendants by July 13, 2016, and also that he had sent the documents to defendants on August 5, 2016. [Docket No. 38]. This Court has treated plaintiff's

---

[5] There is no indication that defendants' counsel was copied on any of these letters. Nor were the letters filed with the Clerk of Court. Thus, the Court filed these letters and they now appear on the Court's electronic filing system.

[6] Again, there is no indication that defendants' counsel was copied on this letter. Nor was it filed with the Clerk of Court. Thus, the Court filed the letter and it now appears on the Court's electronic filing system.

[7] Plaintiff stated he had filed three affidavits. Docket No. 38. However, only two affidavits have been sent to the Court. See Docket No. 36.

letters dated June 20 and July 11, 2016, along with the two affidavits attached to the July 11, 2016 letter, as his response to defendants' motion for summary judgment.

In the June and July letters, plaintiff stated that Dr. Augdahl had denied his requests for Wellbutrin on or around December 20, 2014, March 12, 2015, May 17, 2016, June 29, 2016, and July 6, 2016. [Docket Nos. 35, 36]. Plaintiff attached to the June letter a copy of the medical report by Ulwelling dated March 12, 2015, in which Ulwelling had recommended that plaintiff be given Wellbutrin. See Docket No. 35, Ex. 1. In the first Affidavit attached to the July letter, plaintiff requested that the Court grant damages in plaintiff's favor; in the second Affidavit, plaintiff stated that everything in the complaint was "true and correct," as were the documents in the exhibits. [Docket No. 36].

## II.  DISCUSSION

### A.  Legal Standard

#### 1.  Summary Judgment

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); see also Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219 (8th Cir. 1999). "A fact is material when it might affect the outcome of the suit under governing law." Davis v. Oregon Cty., Missouri, 607 F.3d 543, 548 (8th Cir. 2010) (citing Anderson, 477 U.S. at 248).

"In considering summary judgment motions, the burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party." Allard v. Baldwin, 779 F.3d 768, 771 (8th Cir. 2015) (citing Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 680 (8th Cir. 2012)). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Rohr v. Reliance Bank, 826 F.3d 1046, 1078-79 (8th Cir. 2016) (citing Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078 (8th Cir. 2008)); see also Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995) (The non-moving party "must substantiate his allegations with sufficient probative evidence that would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy.") (alteration in original).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Gibson v. Geithner, 776 F.3d 536, 539 (8th Cir. 2015) (internal quotation marks omitted) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011)).

### 2. Eighth Amendment

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from deliberate indifference to serious medical needs." Laganiere v. Cty. of Olmsted, 772 F.3d 1114, 1116 (8th Cir. 2014) (citing Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000)); see also Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004)

("Prison doctors and guards violate the Eighth Amendment when they act with 'deliberate indifference to [an inmate's] serious medical needs.'" (alteration in original) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "'A prima facie case alleging ... deliberate indifference requires the inmate-plaintiff to demonstrate that [s]he suffered from an objectively serious medical need and that prison officials actually knew of, but deliberately disregarded, that need.'" Reid v. Griffin, 808 F.3d 1191, 1192 (8th Cir. 2015) (alterations in original) (quoting Meuir v. Greene Cty. Jail Emps., 487 F.3d 1115, 1118 (8th Cir. 2007)).

"'Deliberate indifference has both an objective and a subjective component.'" Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009) (quoting Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006)). "The objective component requires a plaintiff to demonstrate an objectively serious medical need." Id. (citing Grayson v. Ross, 454 F.3d 802, 808-09 (8th Cir. 2006); Moore v. Jackson, 123 F.3d 1082, 1086 (8th Cir. 1997)). "An objectively serious medical need is one that 'has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" Laganiere, 772 F.3d at 1116 (quoting Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008)). "The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need." Vaughn, 557 F.3d at 908 (citations omitted); see also Hartsfield v. Colburn, 491 F.3d 394, 396–97 (8th Cir. 2007) ("'To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but

10

deliberately disregarded those needs.'") (quoting Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir.1999)).

"Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Jenkins v. Cty. of Hennepin, Minn., 557 F.3d 628, 632 (8th Cir. 2009) (internal quotation marks omitted) (quoting Bender, 385 F.3d at 1137). "'Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'" Bender, 385 F.3d at 1137 (quoting Estelle, 429 U.S. at 106). "Likewise, an inmate's 'mere disagreement with the course of his medical treatment' fails to state a claim of deliberate indifference." Id. (citing Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990); Dulany, 132 F.3d at 1239–44; see also Vaughn, 557 F.3d at 909 ("Indeed, defendants 'do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.'") (quoting Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996)).

### B.     Analysis

Turning first to the objective component of the deliberate indifference standard, and applying all reasonable inferences in favor of plaintiff, the Court finds that there is a fact issue as to whether plaintiff suffered from an objectively serious medical need. Plaintiff's medical records show that he was diagnosed with major depressive disorder, mood disorder and antisocial personality disorder, and Dr. Augdahl prescribed Effexor XR to treat his symptoms. Novak Aff., Ex. 1. In other words, plaintiff was diagnosed by

a physician as requiring medical treatment. Laganiere, 772 F.3d at 1116. Accordingly, a reasonable jury could conclude that plaintiff's mental health issues were objectively serious. See Salam v. Delaney, 2015 WL 5693133, at *8 (W.D. Ark. Sept. 28, 2015) ("The Court finds that Plaintiff suffered from an objectively serious mental health care need. Plaintiff was seen by Dr. Antoon and prescribed a mental health medication."); cf. Jones, 512 F.3d at 482 ("The determination that a medical need is objectively serious is a factual finding. If there is a dispute, and a reasonable jury could return a verdict for either party, then summary judgment is not appropriate. Here, Jones was not diagnosed by a physician as requiring treatment. Therefore, Jones's condition must have been so obvious that a layperson would easily recognize the need for treatment.") (internal citation omitted).

However, as to the subjective component, there is no evidence whatsoever in the record showing that defendants deliberately disregarded plaintiff's serious medical needs. To the contrary, the record establishes that plaintiff was given numerous mental health screenings during his incarceration, which revealed few, if any, psychological symptoms. See Novak Aff., Ex. 1. Moreover, plaintiff was prescribed Effexor XR based on reports of past beneficial use. Augdahl, ¶ 8. Plaintiff was 97% compliant in taking Effexor XR, and he reported that it was somewhat effective at treating his symptoms. Id., ¶ 10. Plaintiff has continued to take Effexor XR, and he has maintained regular mental health visits with a psychologist who has described his mental status as "stable." Id., ¶ 14.

In essence, plaintiff has taken issue with the course of treatment chosen by his mental health care providers—i.e. he was prescribed Effexor XR, rather than his drug of

choice, Wellbutrin—which is insufficient as a matter of law to state an Eighth Amendment claim of deliberate indifference. See Reid, 808 F.3d at 1192 ("Reid has a number of other mental health issues for which she has received treatment and monitoring. Her disagreement with these diagnoses and treatment decisions is not actionable under § 1983.") (citations omitted); Beck v. Skon, 253 F.3d 330, 334 (8th Cir. 2001) ("Beck's disagreements with the prison medical staff about his care do not establish deliberate indifference and is not actionable.") (citing Long, 86 F.3d at 765); Green v. Norris, 208 F.3d 217 (8th Cir. 2000) ("Therefore, we agree with the District Court that Green is basically challenging the course of treatment he received at JCCF, which does not constitute an Eighth Amendment violation.") (citation omitted); Smith v. United States, Civ. No. 13-3277 (JRT/LIB), 2015 WL 278252, at *14 (D. Minn. Jan. 22, 2015) ("Prisoners do not have a constitutional right to any particular type of treatment.") (citing White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988)). Plaintiff has offered no evidence showing that defendants ever failed to address his mental health issues, or that his course of treatment was in any way insufficient or unreasonable. Further, plaintiff has not alleged, let alone established via admissible evidence, that his mental health issues worsened due to any delay in treatment. See Jackson v. Riebold, 815 F.3d 1114, 1120 (8th Cir. 2016) (to sustain claim for deliberate indifference, court "required the inmate 'to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.'") (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)); Senty-Haugen v. Goodno, 462 F.3d 876, 890 (8th Cir. 2006) (where plaintiff asserted that the state officials delayed treatment to his heart condition, broken leg, and inflamed cyst and that the delay amounted to deliberate indifference to

his medical needs, summary judgment upheld because plaintiff failed to present any evidence that the alleged delays in treatment worsened his conditions and because he did not provide any expert evidence that the treatment he received was inadequate).

For all of these reasons, the Court concludes that no reasonable jury could find that defendants knew of and deliberately disregarded plaintiff's objectively serious mental health needs. Accordingly, defendants' motion for summary judgment should be granted, and plaintiff's Amended Complaint should be dismissed with prejudice.

### III.  RECOMMENDATION

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

1. Defendants Lon Augdahl, M.D. and Joan Ulwelling, R.N., Motion for Summary Judgment [Docket No. 24] be **GRANTED**.

2. Plaintiff's Amended Complaint [Docket No. 17] be DISMISSED WITH PREJUDICE.


Dated:     September 29, 2016                *s/ Janie S. Mayeron*
                                             JANIE S. MAYERON
                                             United States Magistrate Judge

### NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 13, 2016** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.